**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| RAY LECROY, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 2:13-CV-00174-RWS |
| WILBROS, LLC, *et al.*, : | |
| : | |
| Defendants. : | |
| : | |

## ORDER

This case comes before the Court on Plaintiffs' Motion for Leave to File Second Amended Complaint [21].  After reviewing the record, the Court enters the following Order.

## Background

This case arises out of Defendants' operation of the Wilbros Organic Recovery ("Wilbros Facility") located at 215 Coats Drive, Toccoa, Georgia. Defendants opened the 136-acre site in 2009, which occupies a portion of a former textile manufacturing plant's wastewater treatment system, to conduct composting operations, solid waste management, and wastewater treatment. (Compl., Dkt. [1] ¶¶ 15-16, 31-33.)  The Wilbros Facility stores, treats,

processes, and disposes of various industrial wastes, such as poultry waste, dairy waste, feed stock, and septic waste, and then composts much of it to manufacture fertilizer.  (Id. ¶¶ 23, 25.)  It "also receives and processes sanitary wastewater from the existing textile operations on site," which Plaintiffs state was the original purpose of the facilities Defendants now operate.  (Id. ¶ 24.)

Plaintiffs allege that the original wastewater treatment facility "was not designed for the operations and processes being conducted at the Wilbros Facility or for the treatment of wastes and material received, processed and handled by the Wilbros Facility."  (Id. ¶ 34.)  Furthermore, Plaintiffs state that Defendants conduct their operations "without the proper design and treatment facilities necessary to receive, handle, store and process the wastes and materials received by the Facility."  (Id. ¶ 36.)  As a result, Plaintiffs have experienced "strong, pungent, nauseating and offensive odors" emanating from the site, (id. ¶ 38), which have had significant negative effects on the surrounding community to the point of posing a "detriment[ ] to the health, safety and welfare of the Plaintiffs in the community."  (Id. ¶¶ 40-64.)

On August 2, 2013, Plaintiffs filed this action seeking an injunction and damages under the state-law torts of nuisance and trespass in addition to state

and federal environmental statutes.  Under the lone federal statute Defendants cite, the Clean Air Act of 1970, 42 U.S.C. § 7901, et seq., Plaintiffs initially alleged that Defendants were a major source of hazardous air pollutants listed in 42 U.S.C. § 7412(b)(1).  Plaintiffs moved for a preliminary injunction [5] on August 9, 2013, and filed an Amended Complaint [7] on August 12, 2013.  Defendants then filed a Motion to Dismiss [9] disputing, among other issues, this Court's basis for federal question jurisdiction.[1]  As Defendants argued, "Plaintiffs seek to invoke the federal Clean Air Act, but without [identifying] any authority supporting its application, the substance(s) allegedly being emitted from the Wilbros facility, or any emission standards or limitations that are allegedly being violated.  Plaintiffs have also failed to specify any permit issued under the Clean Air Act that Defendants are allegedly violating."  (Defs.' Br., Dkt. [9-1] at 4-5.)  Moreover, Plaintiffs had not complied with the 60-day notice requirement for that particular claim.  See 42 U.S.C. § 7604(b)(1)(A) (requiring an individual alleging violations of emissions standards under the Clean Air Act to provide 60 days of notice to the Administrator of the

---

[1]Plaintiffs originally asserted diversity as another basis for subject matter jurisdiction, but Plaintiffs have since acknowledged that the parties are not completely diverse.  (Pls.' Proposed Second Am. Compl., Dkt. [21] ¶ 20.)

3

Environmental Protection Agency ("EPA"), the state, and the alleged violator before filing a citizen suit).

Plaintiffs subsequently filed a Motion for Leave to File Second Amended Complaint [21].  Citing the deficiencies Defendants had pointed out, Plaintiffs withdrew their Clean Air Act claim accusing Defendants of being "a major source of hazardous air pollutants[,] including one or more of those air pollutants listed in 42 U.S.C. § 7412(b)(1)."  (Pls.' Proposed Second Am. Compl., Dkt. [21] ¶ 21.)  Nevertheless, Plaintiffs argue that they can maintain a federal claim under the Clean Air Act because Defendants are operating without a permit required under the federal–state regulatory scheme described in Part II, *infra*.  (See id. ¶ 11-15; Pls.' Reply, Dkt. [26] at 9.)  In a scheduling conference on October 18, 2013, the Court expressed concern over whether it has subject matter jurisdiction over this case.  The Court then denied Plaintiffs' Motion for Preliminary Injunction [5] and Defendants' Motion to Dismiss [9] as moot pending resolution of the instant motion, and thus resolution of the federal question issue, which the Court considers below.  (Order, Dkt. [25].)

## Discussion

**I.    Legal Standard**

4

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one days after service of the pleading, or, if the pleading requires a response, within twenty-one days after service of a responsive pleading or motion filed under Rule 12(b), (e), or (f).  Otherwise, under Rule 15(a)(2), the party must seek leave of court or the written consent of the opposing parties to amend.  Rule 15(a)(2) directs the Court, however, to "freely give leave when justice so requires."  Despite this instruction, however, leave to amend is "by no means automatic."  Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979).  The trial court has "extensive discretion" in deciding whether to grant leave to amend. Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir.1999).  A trial court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays or is futile."  Id.  A claim is futile if it cannot withstand a motion to dismiss.  Fla. Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir.1996); see Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir.1999) (futility is another way of saying "inadequacy as a matter of law").  That is, leave to amend will be denied "if a proposed amendment fails to correct the deficiencies in the original complaint

5

or otherwise fails to state a claim." Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1255 (11th Cir. 2008).

## II. Analysis

Because subject matter jurisdiction over this case depends on the presence of a federal question, the Court first considers Plaintiffs' amended allegations implicating federal law under the Clean Air Act of 1970. The Clean Air Act sets out a "scheme of joint state and federal implementation," Sierra Club v. Georgia Power Co., 443 F.3d 1346, 1348 (11th Cir. 2006), wherein the EPA sets standards regulating the emissions of certain hazardous pollutants, 42 U.S.C. § 7409, while each state creates a State Implementation Plan to ensure compliance with the federal standards. Id. § 7410.

In 1977, Congress amended the Clean Air Act to create "the Prevention of Significant Deterioration (PSD) program [to] ensure[ ] that any new emissions will not significantly degrade existing air quality." U.S. v. EME Homer City Generation, L.P., 727 F.3d 274, 279 (3d Cir. 2013). Under the PSD program, anyone wishing to construct or modify a "major emitting facility" is first required to obtain a permit from the state or EPA and to meet other preconstruction requirements. 42 U.S.C. § 7475(a).

To ensure compliance with EPA and state regulations, Congress authorized "citizen suits" under three circumstances in § 7604(a) of the Clean Air Act. First, Congress gave " 'any person' the authority to bring a civil action on his or her own behalf 'against any person . . . who is alleged to have violated . . . an emission standard or limitation under this chapter.' " Sierra Club, 443 F.3d at 1349 (quoting 42 U.S.C. § 7604(a)(1)). Before bringing suit, however, a plaintiff must comply with § 7604(b)'s 60-day notice requirement. As described above, Plaintiffs originally brought suit under this subsection by alleging that Defendants exceeded the emissions limits of regulated pollutants, (Compl., Dkt. [1] ¶ 79), but withdrew the claim after failing to specify any standards or pollutants emitted and failing to provide adequate notice.

In the second circumstance, Congress authorized suits "against the [EPA] Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). The pre-suit notice requirement also applies to § 7604(a)(2). However, this subsection is not implicated here because Plaintiffs do not name the Administrator in this action.

Finally, Plaintiffs bring their Clean Air Act claim under the third citizen-suit provision, which authorizes a civil action "against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under [§ 7475 (a)]." 42 U.S.C. § 7604(a)(3). This section lacks a notice requirement.[2] Plaintiffs argue that because Defendants have never had a permit under the Clean Air Act or the Georgia Air Quality Act, the suit may move forward under § 7604(a)(3). Defendants counter that they are not "engaging in any business or activity which requires a permit under the federal Clean Air Act or the Georgia Air Quality Act." (Defs.' Resp., Dkt. [24] at 3.)

Defendants are correct. Although Defendants did not obtain a permit before commencing operations at the Wilbros Facility, the statute only imposes preconstruction conditions on "major emitting facilities." 42 U.S.C. § 7475(a). A "major emitting facility" is defined in the statute as any of the listed "stationary sources of air pollutants which emit, or have the potential to emit, one hundred tons per year or more of any air pollutant." Id. § 7479(1). The

---

[2]While the parties discuss the exceptions to the notice requirement in their briefs, the notice requirement only applies to §§ 7604(a)(1)-(2). Because Plaintiffs now cite § 7604(a)(3) for their Clean Air Act claim, the notice issue is no longer relevant.

8

statute then specifically names sources that qualify as major emitting facilities requiring permits before construction, such as "fossil-fuel fired steam electric plants . . . , primary zinc smelters, iron and steel mill plants, primary aluminum ore reduction plants, . . . municipal incinerators capable of charging more than fifty tons of refuse per day, . . . sulfur recovery plants," and many others. Id. The type of facility Defendants operate, however, is not among them. Plaintiffs do not allege that Defendants engage in any of the above activities. Defendants' composting and waste processing activities may emit noxious odors that Plaintiffs find offensive, but these activities and the resulting emissions are not the sort that Congress contemplated when it defined the term "major emitting facility" in the Clean Air Act.[3]  Because § 7475(a) does not apply to the Wilbros Facility, Defendants are not required to obtain a permit under the Clean Air Act.  Consequently, Plaintiffs cannot sue them under § 7604(a)(3).

---

[3]Nor is it clear that Defendants constructed or modified any portion of the Wilbros Facility—activities that trigger the permit requirement.  It appears that Defendants commenced operations with existing facilities but use them for different purposes.  But even if the Court were to assume that Defendants constructed or modified the Wilbros Facility, Plaintiffs' claim fails because Defendants do not operate a major emitting facility within the Clean Air Act's definition.

9

Plaintiffs thus fail to allege any basis for maintaining a citizen suit under § 7604, the only federal claim in their Proposed Second Amended Complaint [21]. The Court need not consider the sufficiency of Plaintiffs' tort and statutory claims based on state law. Without a federal claim present, the Court lacks original subject matter jurisdiction over this action,[4] and exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) would be inappropriate considering the suit is still in its early stages. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (holding that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction"). As such, granting leave to amend would be futile. To the extent that Plaintiffs wish to pursue their state-law claims, they must pursue those claims in state court.

---

[4]The Court notes that Plaintiffs make a cursory reference to the Georgia Comprehensive Solid Waste Management Act, O.C.G.A. § 12-8-20, et seq., and the Federal Water Pollution Control Act, 33 U.S.C. § 1342, et seq., in their Proposed Second Amended Complaint. (Dkt. [21] ¶ 16.) But as Defendants argue, Plaintiffs fail to allege how Defendants violated those laws and fail to specify the permits Defendants failed to obtain. (Defs.' Resp., Dkt. [24] at 5.) Moreover, Plaintiffs do not cite, and the Court cannot find, any section in the Federal Water Pollution Control Act authorizing citizen suits under these circumstances. The Court thus finds no basis for federal question jurisdiction under this statute.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion for Leave to File Second Amended Complaint [21] is **DENIED**.  Plaintiffs' federal claim under the Clean Air Act is **DISMISSED**, while their remaining state-law claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction.  The Clerk shall close the case.

**SO ORDERED**, this   21st  day of January, 2014.

*[signature]*

**RICHARD W. STORY**
United States District Judge